IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

THE FLORIDA DEPARTMENT OF
FINANCIAL SERVICES, as receiver
in rehabilitation of UNION AMERICAN
INSURANCE COMPANY,

        Plaintiff,

vs.                               CASE NO.: 4:07cv207-SPM/WCS

MIDWEST MERGER MANAGEMENT,
LLC; et al.,

        Defendants.
_____/

## ORDER DENYING MOTION TO REMAND

      This case presents a threshold issue: whether Florida's statutory

provision, Section 631.021(6), Florida Statutes, which vests exclusive jurisdiction

with the Florida Circuit Court over the assets or property of any insurer in

rehabilitation, applies in this case so as to reverse preempt the federal removal

statute.  Other issues presented concern the propriety of abstention under the

Younger and Burford doctrines, the application of the Rooker-Feldman doctrine,

and whether diversity of citizenship exists between the parties.

### I.      Background

      This case was initiated by Florida regulators against defendants who

allegedly engaged in fraud to appropriate premiums and other funds that should have been paid over to Union American Insurance Company ("UAIC"). The policy at issue is a large-deductible workers' compensation policy that UAIC provided for The Cura Group Inc. ("Cura"), now known as Certified HR Services Company. The policy was in effect from June 30, 2003, through October 12, 2004.

The Florida Department of Financial Services ("Department") placed UAIC in receivership in 2003 and rehabilitated it under the provisions of Section 631.031, Florida Statutes[1]. UAIC became impaired again and was placed in receivership on February 9, 2005. This impairment allegedly was caused by Cura's failure to turn over 30% of collected premiums and failure to pay claims up to $1 million as provided in the workers' compensation policy. Under the agreement between UAIC and Cura, Cura was also required to deposit $5 million as cash collateral to secure claims incurred under the policy. Cura failed to do so. UAIC was left exposed to payment of all claims as a result, even though there was never a claim in excess of $1 million.

On February 25, 2005, the Department served a demand upon Cura to turnover the wrongfully withheld funds. The demand was made in accordance

---

[1] Under § 631.031, the Florida Department of Financial Services is authorized to commence proceedings to rehabilitate an insurer upon a determination by the Office of Insurance Regulation that one or more grounds exist.

with Section 631.154(1), Florida Statutes, which authorizes the receiver to demand delivery of funds, assets, or property that is rightfully the estate of the impaired insurance company.  A hearing was held before the Florida Circuit Court that was presiding over the receivership.  At the conclusion of the hearing, the Florida Circuit Court directed Cura to turn over $2,737,067 to the Department on behalf of UAIC.

According to the Department, Cura's principals caused to be incorporated several new companies in an effort to avoid payment of the $2,737,067.  On May 12, 2005, the Department garnished $1 million from Cura's bank accounts.  The Department also had the Sheriff of Broward County serve a Writ of Execution upon Cura and commenced levy proceedings on Cura's personal property.  Within 3 hours, Cura filed a voluntary Chapter 11 petition for bankruptcy to stay the levy process.

It is the Department's position that Cura has additional funds that are held by its affiliates and its agents, officers, and directors; particularly Midwest Merger Management, LLC; Brentwood Capital Corporation; Danny L. Pixler; Roxann Pixler; Anthony Huff; Sheri Huff; and Charles J. Spinelli, who are the named defendants in this case.  The Department filed a 11-count complaint against them for Breach of Contract (Count 1), Negligent Misrepresentation (Count 2), Fraud (Count 3), Constructive Trust (Count 4), Unjust Enrichment (Count 5), Breach of

Fiduciary Duty[2] (Count 6), Breach of Fiduciary Duty under Section 626.561 (Count 7), Violation of Florida RICO Statute (Count 8), Conversion under Common Law and Section 626.561 (Count 9), Violation of Florida's Deceptive and Unfair Trade Practices Act (Count 10), and Civil Conspiracy (Count 11).

The Department filed the complaint with the Florida Circuit Court in and for Leon County that oversaw the receivership and rehabilitation of UAIC. Defendants removed the case to federal court.  The Department seeks to remand.

## II.    Reverse Preemption under McCarran-Ferguson

Regulating the business of insurance has long been the domain of state government and considered outside the realm of interstate commerce that Congress has intended to regulate.  Blackfeet Nat. Bank v. Nelson, 171 F.3d 1237, 1245 (11th Cir. 1999).  As clarified by Congress in the McCarran-Feguson Act, "[n]o Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance . . . ."  15 U.S.C. § 1012(b).  The effect of the provision is to reverse in the area of insurance regulation the normal preemption of federal laws over state laws.  Blackfeet, 171 F.3d at 1245.  Federal laws will not be applied to interfere with

---

[2]  This claim is only against Defendants Pixler, Spinelli, and Brentwood.

state regulation of insurance unless it appears that Congress intended to affect

the business of insurance as a part of its regulation of interstate commerce.

Humana Inc. v. Forsyth, 525 U.S. 299, 307 (1999).  The states thus retain the

general responsibility to determine the "relationship between insurer and insured,

the type of policy which could be issued, its reliability, interpretation, and

enforcement."  SEC v. Nat'l Sec., Inc., 393 U.S. 453, 460 (1969).

Determining whether a federal law is reverse preempted under the

McCarran-Ferguson Act involves two areas of inquiry.  Id. at 308-09.  The first is

whether the federal law regulates the business of insurance.  Id.  If it does, then

there is no reverse preemption because Congress intended for the federal law to

apply to insurance.  Id. at 307-09.  If the federal law does not regulate the

business of insurance, the second consideration is whether the law invalidates,

impairs, or supersedes a state law regulating the business of insurance.  Id. at

307.  If the federal law invalidates, impairs or supersedes, then it will give way

under reverse preemption to the state law regulating insurance.  Id. at 310.  If the

federal law does not invalidate, impair, or supersede, then it can be applied

without doing harm to the state's interest in insurance regulation.  Id.   The

bottom line as stated by the Untied States Supreme Court is that "[w]hen federal

law does not directly conflict with state regulation, and when application of the

federal law would not frustrate any declared state policy or interfere with a State's

administrative regime, the McCarran-Ferguson Act does not preclude its

application."  Id.

In this case, the federal law at issue is the removal statute, 28 U.S.C. §
1441, which allows litigants to remove certain cases from state court to federal
court.  It is undisputed that the removal statute does not specifically relate to the
business of insurance.  The first part of the reverse preemption test is therefore
satisfied.

Under the second part of the test, the Department contends that the
removal statute conflicts with state insurance regulations, specifically, Section
631.021(6), Florida Statutes, which grants sole venue and exclusive original
jurisdiction over the property of an insurer and rehabilitations proceedings to the
Circuit Court of Leon County.  Section 631.021(6), Florida Statutes, states that:

> The domiciliary court acquiring jurisdiction over persons subject to
> this chapter [Insurer's Rehabilitation and Liquidation Act] may
> exercise jurisdiction to the exclusion of all other courts, except as
> limited by provisions of this chapter.  Upon the issuance of an order
> of conservation, rehabilitation, or liquidation, the Circuit Court of
> Leon County shall have exclusive jurisdiction with respect to assets
> or property of any insurer subject to such proceedings and claims
> against said insurer's assets or property.

(emphasis supplied).  According to the Department, this case falls within the
ambit of § 631.021(6) because it involves the assets of UAIC, an insurer in
rehabilitation.  The Department contends that Defendants took funds that Cura
was obligated to provide to UAIC in the form of collected premiums, claims
payments, and collateral.  "Premiums and unearned commissions which have

been collected on behalf of an insurer by an agent, agency, or other entity or person constitute an asset of the insurer . . ." under Florida law, § 631.155, Fla. Stat., and "all persons or entities involved in the handling and transmittal of premium funds" have a "duty to account to the receiver and pay over amounts as may be due."  Id.

Defendants argue that this case does not fall within the ambit of § 631.021 and therefore the removal of this case to federal court would not conflict with Florida insurance regulations.  Defendants note that they are not insurers, and that the Department's claims against them involves a substantial dispute over damages, which Defendants argue are not required to be litigated in the Leon County Circuit Court.  This position has support under Florida law.

There is a distinction under Florida law between property that belongs to an insurer and property contended by the receiver to be the assets of the insurer. Nova Ins. Group. Inc., v. Fla. Dep't of Ins., 606 So. 2d 429, 433 (Fla. 1st Dist. Ct. App. 1992).  The former constitutes part of the receivership estate and any claims to the property must be made before the Leon County Circuit Court as part of the receivership proceeding.  Id. at 433.  On the other hand, property merely contended by the receiver to be an asset insurer is not part of the receivership estate, and claims to the property are not required to be brought in the receivership court.  Id.  To recover contended assets, "[t]he department, in its capacity as administrator, receiver, or similar capacity, may pursue any actions

for damages or other recoveries on behalf of the insurer's estate and the insurer's policyholders, creditors, and other claimants." § 631.3915, Fla. Stat. There is no requirement, however, for what is in effect an ordinary civil action, but with the Department acting as a claimant in the shoes of the insolvent insurer, to take place exclusively in the receivership court.  See e.g. Ocean Bank v. Fla. Dep't of Fin. Services, 902 So. 2d 833 (Fla. 1st Dist. Ct. App. 2005) (receivership court did not have exclusive jurisdiction of Department's claim on behalf of insurer in receivership to void mortgages).

In this case, a review of the complaint shows that the Department is seeking to recover contended assets and pursuing an action for damages on behalf of UAIC against Defendants for fraud and misappropriation of funds. Although the Department is authorized to bring the action under § 631.3915, Fla. Stat., Florida law does not require the action to be litigated in the receivership court.  Id.; Nova Ins. Group, 606 So. 2d 429.  In fact, as the Department acknowledges, it initially sought to join Defendants Midwest Merger Management and Brentwood to the demand it made upon Cura, under § 631.154, for the undisputed assets of UAIC.  It later withdrew its efforts to include Midwest and Brentwood and pursued instead this separate action against Defendants.  See Leon County Circuit Court Order, Doc. 21-2 at pp. 6-7.

Because in this case the Department is pursuing contested claims on behalf of UAIC, as opposed to making a demand for the undisputed assets of

UAIC, the exclusive venue provision of § 631.021(6) does not apply.

Accordingly, the receivership court does not have exclusive jurisdiction under

Florida law and there is no conflict between the federal removal statute and

Florida laws regulating the business of insurance.  Given the absence of any

conflict, reverse preemption under the McCarran-Ferguson act is not warranted.

      As an additional basis for finding that the removal statute is not reverse-

preempted, several federal appellate courts have addressed the issue.  They

have found even when state insurance laws provide exclusive jurisdiction with

the receivership court, removal of proceedings to federal court does not interfere

with the regulation of insurance so as to require reverse preemption.  See Gross

v. Weingarten, 217 F.3d 208, 222 (4th Cir. 2000) (diversity jurisdiction for

counter-claim against insolvent insurer not reverse-preempted because state's

interest in exclusive venue for receivership estate is preserved in receivership

plan, which any judgment against insurer's assets would be subject to for

collection); Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Ill., 421 F.3d 835,

843 (9th Cir. 2005) (removal of suit against insured does not interfere with

receivership proceedings); Int'l Ins. Co. v. Duryee, 96 F.3d 837, 840 (6th Cir.

1996) (exclusive venue provision for suits against out-of-state insurance

company does not reverse preempt federal removal statute); AmSouth Bank v.

Dale, 386 F.3d 768, 780-783 (6th Cir. 2004) (federal jurisdiction over declaratory

judgment action did not interfere with state regulation of insurance where

insolvent insurer's position in the action was similar to a plaintiff in a contract or tort case); Suter v. Munich Reinsurance Co., 223 F.3d 150, 161 (3d Cir. 2000) (suit filed by the liquidator against a reinsurer not returned to receivership court).

The removal of the Department's action against Defendants to this Court will not interfere with the receivership proceedings.  The Department's complaint presents separate contract, tort, and similar claims that could have been brought outside the receivership context by Cura.  Unlike the cases relied upon by the Department to argue for reverse preemption, this case does not involve recovery from a preferential transfer, which claim arises under insurance liquidation laws and for which the receivership court has exclusive jurisdiction.[3]  Nor does this case involve any other claim to assets that can be resolved through summary proceedings.  Nova Ins. Group. Inc., v. Fla. Dep't of Ins., 606 So.2d at 433; see also ex rel Gerber v. Cent. Cas. Co., 226 N.E. 862, 398-99 (Ill. 1967) (drawing parallel between power of insurance receivership court to determine claims in summary proceedings with power of bankruptcy court).  Allowing the action to be removed to federal court would not frustrate any declared state policy or interfere

---

[3]   C.f. Covington v. Sun Life of Can. (U.S.) Holdings, Inc., No. C-00-069, 2000 WL 33964592 (S.D. Ohio May 17, 2000) (federal removal statute reverse preempted in action by liquidator to invalidate preferential transfer); Amwest Sur. Ins. Co. v. J.A. Jones Constr. Co., 245 F.Supp.2d 1038 (D. Neb. 2002) (same); Amwest Sur. Ins. Co. v. Swiss Reinsurance Am. Corp., No. 8:03CV273, 2004 WL 628217 (D. Neb. Mar. 30, 2004) (same); Corcoran v. Universal Reinsurance Corp., 713 F.Supp. 77 (S.D. N.Y. 1989) (same but involving claim for set-off).

with the state's administrative regime.  Accordingly, reverse preemption under McCarran-Ferguson is not warranted.

### III.    Abstention Doctrines

There are generally four varieties of abstention that may cause a federal court to suspend a case or decline jurisdiction.  Under Younger abstention[4], a federal court will abstain from exercising jurisdiction when there is a pending state proceeding that is capable of hearing the federal issue presented and the exercise of federal jurisdiction would unduly interfere with the state proceeding. Under Burford abstention[5], a federal court must dismiss or stay an action involving difficult questions of state law where federal intervention might disrupt state efforts to formulate a coherent policy in an area of particular local concern. Under Pullman abstention[6], a federal court has discretion to decline jurisdiction over a case involving federal constitutional issues and unsettled questions of state law when the resolution of the state law questions will moot the constitutional issues or materially alter the issues.  Finally, under Colorado River abstention[7], federal court may stay an action pending before it when there is a

---

[4]  Younger v. Harris, 402 U.S. 37 (1971).

[5]  Burford v. Sun Oil Co., 319 U.S. 315, (1943).

[6]  RR Comm'n of Texas v. Pullman, 312 U.S. 469 (1941)

[7]  Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800 (1976).

concurrent separate action pending in state court that raises the same or substantially the same issues.  The Department argues first for abstention under Younger, and then under Burford.

Younger abstention does not apply given the posture of this case.  When a case is removed from state to federal court, the state proceeding is effectively terminated and is therefore not a pending state proceeding with which the removed federal case would interfere.   Virginia v. Bulgartabac Holding Group, 360 F.Supp.2d 791, 797-98 (E.D. Va. 2005).  Consequently, when the Younger doctrine properly applies, the result is a stay or dismissal of a removed case, not a remand to the state court.  See Belair v. Lombardi, 828 F.Supp. 50, 52 (M.D. Fla. 1993) ("[A]bstention under the Younger doctrine properly results in a dismissal or stay of the case, not a remand.").  In this case, the Department does not seek to dismiss or stay its action against Defendants.  It is seeking a remand. A remand is not appropriate under Younger.  Id.  Moreover, as there is no pending state proceeding with this case would interfere, abstention under Younger is not warranted.  Bulgartabac, 360 F.Supp.2d at 797-98.

As for Burford abstention, the doctrine comes closer to the mark but still misses.  Abstention under Burford is appropriate in a narrow class of cases where the exercise of federal jurisdiction would disrupt a state's regulatory process in an area of substantial local interest.  Siegel v. LePore, 234 F.3d 1163, 1173 (11th Cir. 2000).  In this case, the exercise of federal jurisdiction would not

disrupt the receivership of UAIC since the Department is acting as a plaintiff in place of UAIC, raising claims that UAIC could have raised outside the receivership context.  Since the receivership itself is peripheral to the issues, the case does not implicate broad regulatory concerns so as to warrant Burford abstention.  See Melahn v. Pennock Ins., Inc., 965 F.2d 1497, 1504-07 (8th Cir. 1992) (remand not warranted by Burford where state liquidation scheme was not material to receiver's claims); Grode v. Mut. Fire, Marine and Inland Ins. Co., 8 F.3d 953, 959 (3d Cir. 1993) (remand not warranted where claims made by insurance commissioner amounted to contract and tort action to recover an alleged debt, and thus did not implicate insurance regulatory scheme); Gross v. Weingarten, 217 F.3d 208, 224 (4th Cir. 2000) (abstention not warranted where "[t]he individual defendants' claims are routine contribution and indemnification claims whose significance is entirely limited to this case.");  AmSouth Bank v. Dale, 386 F.3d 768, 763 (6th Cir. 2004) ("State liquidation proceedings seem like an excellent candidate for Burford abstention, but it is difficult to see how a federal court's pronouncement on issues of common-law liability having nothing to do with insurance could be disruptive of those proceedings.").

As an additional ground, the United States Supreme Court has clarified that a remand or dismissal (as opposed to a stay) under Burford is appropriate only in cases where the relief being sought is equitable or otherwise discretionary.  Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 731 (1996).  In

this case, the Department is pursuing claims for damages, which precludes a remand on Burford grounds.  Id.; see also Superior Beverage Co. v. Schieffelin & Co., 448 F.3d 910, 914 (6th Cir. 2006) ("[A] claim seeking both equitable damages and money damages would not be an appropriate claim for abstention."); MLC Auto. v. S. Pines, No. 1:05CV01078, 2007 WL 1792346 at *3 (M.D. N.C. Jun. 9, 2007) (issuing a stay, rather than dismissal, in case seeking equitable relief and damages).  Accordingly, the motion to remand on Burford grounds must be denied.

### IV.    Rooker-Feldman Doctrine

The Rooker-Feldman[8] doctrine prescribes the jurisdictional limitation of lower federal courts over decisions rendered by state courts.  It recognizes that lower federal courts do not have jurisdiction to reverse or modify state court judgments.  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284-85 (2005).  The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Id. at 1521-22.  This case does not present circumstances where Rooker-Feldman applies.

The claims raised by the Department against Defendant have yet to be

---

[8]   Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

litigated.  The Department is not in the position of a "state-court loser" and there is no state court judgment that the Department is inviting this Court to review or reject.  Accordingly, Rooker-Feldman has no application.  The Department's motion to remand on Rooker-Feldman grounds will therefore be denied.

### V.      Diversity of Citizenship

As its last argument, the Department contends that federal jurisdiction based on diversity of citizenship is lacking because Defendants Danny L. Pixler and Roxann Pixler are Florida citizens.  Defendants have responded by clarifying that they were citizens of Tennessee since July of 2006, thus encompassing the time of the filing of this complaint and the notice of removal.   The Department has been given an opportunity to reply (doc. 25) and has not challenged Defendants' claims of citizenship.  Accordingly, the Department's motion to remand will be denied as to this ground.

### VI.      Conclusion

The McCarran-Ferguson Act does not prevent removal of this case because the Department's claims are not subject to the exclusive jurisdiction of the receivership court and removal will not interfere with Florida's insurance regulatory scheme.  No abstention doctrine applies to preclude jurisdiction.  The Rooker-Feldman doctrine is not applicable.  Diversity of citizenship exists. Accordingly, because there are no grounds to remand this case to the state court, it is

CASE NO.: 4:07cv207-SPM/WCS

ORDERED AND ADJUDGED that the Department's motion to remand and

for attorney fees (doc. 9) is denied.

DONE AND ORDERED this 6th day of August, 2008.


_s/ Stephan P. Mickle_

Stephan P. Mickle
United States District Judge